FILED
2022 Aug-03  PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

MICHELLE AWE,                          )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        Case No. 7:21-cv-399-GMB
                                       )
KILOLO KIJAKAZI,[1] Acting             )
Commissioner of Social Security,       )
                                       )
        Defendant.                     )

## MEMORANDUM OPINION

On February 20, 2019, Plaintiff Michelle Awe filed an application for disability insurance benefits ("DIB") with an alleged disability onset date of November 7, 2018.  Awe's application was denied at the initial administrative level on May 21, 2019, and upon reconsideration on October 8, 2019.  She then requested a hearing before an Administrative Law Judge ("ALJ").  The ALJ held a hearing on July 8, 2020 and denied Awe's claim on September 15, 2020.  Awe requested review of the ALJ's decision by the Appeals Council, which declined review on January 15, 2021.  As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of January 15, 2021.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Awe's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 11. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[2]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted).

---

[2] In general, the legal standards are the same whether a claimant seeks DIB or supplemental security income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

"Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).  There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Awe bears the burden of proving that she is disabled and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

> (1) Is the claimant presently unable to engage in substantial gainful activity?
> (2) Are the claimant's impairments severe?
> (3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform her former occupation?
> (5) Is the claimant unable to perform other work given her residual

functional capacity, age, education, and work experience?
*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).
"An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

Awe was born on January 25, 1974, and she was 44 years old on the date of her application. R. 29.  She lives with her husband and adult daughter. R. 45.  Awe has completed some college coursework. R. 46.   She previously worked as a mechanic, hotel check-in clerk, and in a medical billing and reception position. R. 43; *see* R. 46–51.  Her primary complaints are fibromyalgia, symptoms resulting from a stroke (such as headaches, trouble concentrating, incontinence, and tremors in her right hand), and depression. R. 43–44, 54.  In her disability report, Awe alleged that she is unable to work because of a stroke and fibromyalgia. R. 66.

The ALJ held a hearing in Awe's case on July 8, 2020. R. 39.  At the hearing,

Awe claimed that the stroke she suffered on November 7, 2018 caused many of her symptoms and worsened some existing conditions. R. 52–56.  She testified that the stroke caused her to have headaches and trouble concentrating, to transpose numbers, and to be incontinent and lack stamina. R. 54.  She also testified that the stroke worsened her fibromyalgia such that she can sit or stand for only about half an hour to an hour at a time. R. 54.  She also reported feeling depressed after the stroke, testifying that she no longer enjoyed activities she enjoyed before the stroke and that she felt helpless. R. 55.

Awe testified about her difficulties doing chores around the house. R. 55.  She has trouble standing for extended periods of time and must sit down often. R. 55.  She also has difficulty lifting and carrying items heavier than five pounds, such as a laundry basket. R. 55.  She reported more weakness on her right side, compounding these issues. R. 55.  She testified that she has tried to visit the grocery store, but is unable to stay out of the house for half an hour to an hour before wanting to return home. R. 56.

Awe testified about the various medications she takes. *See* R. 56–57.  Since at least March 2018,[3] she has been prescribed gabapentin for fibromyalgia, which "has helped some" with her pain but causes drowsiness. R. 56.  She also takes

---

[3] The earliest medical records regarding Awe's treatment for fibromyalgia are from an appointment on March 2, 2018 and reflect that Awe was already taking the gabapentin on this date. R. 308.

propranolol for her headaches, but it is not always effective. R. 57.  Additionally, after her stroke, Awe entered a rehabilitation program and began taking Celexa for depression on November 14, 2018. R. 432.  Awe also began taking Effexor for depression on January 31, 2020. R. 937.  These medications help to control her depression. R. 57.

On September 24, 2019, Awe met with John Goff, Ph.D. for a neuropsychological evaluation. R. 904.  Dr. Goff described Awe as "very pleasant, cooperative, [and] affable." R. 905.  He noted that her discourse was "generally logical and coherent." R. 906.  Dr. Goff administered a modified neuropsychological assessment over the course of an afternoon. R. 906.  He found that Awe was currently functioning within the "low average range of psychometric intelligence" and exhibited substantial impairment in her "immediate memory, attention and concentration." R. 908.  From a vocational standpoint, and particularly considering Awe's previous employment, Dr. Goff found that memory limitations and difficulties with coordination of her right upper extremity represented a "significant impediment." R. 908.  However, Dr. Goff noted that Awe was able to understand, follow, and carry out simple instructions as long as they did not require the sequencing of elements. R. 908.  He opined that Awe's psychological condition and neuropsychological issues would interfere with her ability to deal with stress and pressure in the workplace. R. 908.  Dr. Goff reached several conclusions in his

report:

1. She appears to be functioning within the low average range of psychometric intelligence.
2. This represents a decline from previous levels of function.
3. The areas of deficit are more substantial for immediate recall issues and coordination and strength of the right upper extremity and I suspect the right lower extremity.
4. She is rather depressed.
5. Diagnostic impression: Major Vascular Neurocognitive Disorder[;] Adjustment Disorder with Depression, Moderate to Severe[.]

R. 908–09.  Dr. Goff recommended that any "new vocational efforts would have to avoid the necessity for immediate recall skills and manual dexterity skills including manual dexterity skills necessitating the use of the right upper extremity."

On February 25, 2020, Awe met with John Burkhardt, Ph.D. for a psychiatric diagnostic evaluation. R. 973.  Dr. Burkhardt estimated that Awe's intelligence was average and noted that her insight and judgment were within normal limits. R. 975. Awe's responses to a Patient Health Questionnaire showed "moderately severe depression" and Dr. Burkhardt diagnosed her with "Major depressive disorder, recurrent, moderate." R. 976.  Awe met with Dr. Burkhardt again for an individual psychotherapy appointment on March 30, 2020. R. 979.  During this appointment, Dr. Burkhardt and Awe reviewed Dr. Goff's report and discussed her vocational options. R. 979.  Dr. Burkhardt noted that Awe was engaged and interactive in these discussions. R. 980.  On May 26, 2020, Dr. Burkhardt completed a Medical Source Statement for Awe by identifying the level of her impairment in various functional

areas. *See* R. 969–71.  Dr. Burkhardt responded that Awe had a "mild" degree of impairment in one area, a "moderate" degree of impairment in six areas, a "marked" degree of impairment in six areas, and an "extreme" degree of impairment in five areas.[4] R. 969–71.  The five extreme impairments were in Awe's (1) "ability to understand, remember, and carry out simple instructions"; (2) "ability to understand, remember, and carry out complex instructions"; (3) ability to sustain a routine without special supervision"; (4) "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; and (5) "ability to respond to customary work pressures." R. 970–71.

Applying the sequential evaluation process, the ALJ found that Awe has not engaged in substantial gainful activity since her alleged onset date of November 7, 2018. R. 22.  At step two, the ALJ found that Awe suffered from the impairments of status post cerebrovascular ("CVA"), neurocognitive disorder, fibromyalgia, obesity, degenerative disc disorder ("DDD"), arthritis, and depression. R. 23.  The ALJ noted that these medically determinable impairments significantly limit Awe's ability to perform basic work activities. R. 23.  At step three, the ALJ found that

---

[4] On this form, a "mild" impairment does not affect the claimant's ability to function, a "moderate" impairment "affects but does not preclude" ability to function, a "marked" impairment "seriously affects" ability to function, and an "extreme" impairment is an "extreme impairment of the ability to function." R. 969.

Awe did not have an impairment or combination of impairments meeting or medically equal to the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 23.

Before proceeding to step four, the ALJ determined that Awe had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations: occasional pushing or pulling with upper right and lower right extremities; no climbing ladders or scaffolds; occasional climbing ramps and stairs; occasional balancing, stooping, kneeling, crouching, but no crawling; frequent reaching, handling, fingering, feeling; occasional exposure to extreme heat and cold; vibration; no exposure to dangerous machinery or unprotected heights; no work requiring walking on uneven or slippery surfaces; and should have reasonable access to restroom facilities during all customary and routine work breaks. R. 24.  The ALJ relied on a vocational expert's testimony to find that there are jobs existing in significant numbers in the national economy that Awe can perform. R. 29–30.  Thus, at step five of the five-step sequential process, the ALJ found that Awe was not disabled within the meaning of the Social Security Act from November 7, 2018, the alleged onset date, through September 15, 2020, the date of the decision. R. 30.

## IV.  DISCUSSION

On appeal, Awe argues that the ALJ improperly rejected the opinions of her

treating and examining psychologists, Dr. Burkhardt and Dr. Goff, regarding her mental impairments. Doc. 16 at 10.  The court disagrees and finds that the ALJ properly considered and articulated his evaluation of the psychologists' opinions in accordance with the applicable regulations and that substantial evidence supports the ALJ's decision.

Awe argues that an ALJ may not reject the opinion of a treating physician without good cause, as required by the Eleventh Circuit's treating physician rule. Doc. 16 at 10–12.  The Commissioner argues that Awe's reliance on the treating physician rule is misplaced because the Social Security Administration adopted new regulations governing the Commissioner's evaluation of medical opinions for claims, like Awe's, filed after March 27, 2017. Doc. 17 at 7–10.  In her reply brief, Awe concedes that the new regulations govern but argues that the treating physician rule remains in effect through case law. Doc. 18 at 1–3.  Awe is incorrect.

The Eleventh Circuit developed the treating physician rule "as a means to control disability determinations by administrative law judges under the Social Security Act." *Black & Decker Disab. Plan v. Nord*, 538 U.S. 822, 829 (2003). Under this rule, the Eleventh Circuit required an ALJ to articulate good cause for discounting the opinion of a treating physician. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  The Social Security Administration then formalized the treating physician rule in 1991, implementing regulations that

11

required ALJs to "give more weight to medical opinions" from treating sources and to "give good reasons . . . for the weight . . . give[n] [a] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2).

The new regulations eliminate the hierarchy of medical opinions and the treating physician rule. 20 C.F.R. §§ 404.1520c(a) & 416.920c(a). The Commissioner has "full power and authority to make rules and regulations" related to the proof and evidence needed to establish a right to benefits under the Social Security Act. 42 U.S.C. § 405(a). And "[a] court's prior judicial construction of a statute trumps an agency construction . . . only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005).

Here, the Social Security Act requires the Commissioner to "make every effort to obtain from [an] individual's treating physician . . . all medical evidence, including diagnostic tests, necessary in order to properly make [a disability] determination, prior to evaluating medical evidence obtained from any other source on a consultative basis." 42 U.S.C. §§ 423(d)(5)(B) & 1382c(H)(i). But it does not specify how the ALJ must evaluate treating source evidence, and the Eleventh Circuit recently confirmed that the new regulations eliminate the treating physician rule. *Harner v. Soc. Sec'y Admin., Comm'r*, __ F.4th __, 2022 WL 2298528, at *3–

4 (11th Cir. June 27, 2022).

Under the new regulations, an ALJ should focus on the persuasiveness of an opinion by looking at the opinion's supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2).  The ALJ may, but need not, explain how he considered other factors—such as the source's specialization and relationship with the claimant—when assessing a medical opinion. *See id.*  "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1) & 416.920c(c)(1). And "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(2) & 416.920c(c)(2). With these new regulations as the guide, the court turns to the ALJ's treatment of Dr. Burkhardt's and Dr. Goff's opinions.

### 1.    *Dr. John Burkhardt*

The ALJ found that Dr. Burkhardt's opinions presented in the medical source statement he completed on May 26, 2020 were not persuasive:

> The opinion of Dr. Burkhardt is considered not persuasive (Exhibit 23F).  He reported a range of mental limitation including marked and extreme findings.  However, this conclusion is inconsistent with the record.  The claimant's mental limitation are generally conservatively managed with no invasive care.  Throughout the record, there are several occasions in which the claimant had no unremarkable mental

examination (Exhibits 5F, 14F, and 19F).  Accordingly, the extreme
and marked findings of Dr. Burkhardt are considered not persuasive.

R. 28.

Substantial evidence supports the ALJ's decision not to find Dr. Burkhardt's

opinion persuasive, and the ALJ properly evaluated Dr. Burkhardt's opinion under

the new regulations.  First, Dr. Burkhardt's medical source statement provides no

supportive explanation or objective medical evidence.  Dr. Burkhardt simply circled

a degree of impairment corresponding with various statements without any

explanation for why he selected his response. R. 969–71.  Such conclusory opinions

have limited probative value and several courts have criticized "form reports" like

these, where a physician merely checks off a box, fills in a blank, or circles

responses. *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (holding that

the use of a "questionnaire" format typifies "brief or conclusory" testimony); *Mason

v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's

obligation is only to check a box or fill in a blank are weak evidence at best[.]");

*Wilkerson ex rel. R.S. v. Astrue*, 2012 WL 2924023, at *3 (N.D. Ala. July 16, 2012)

(noting that the "form report completed by Dr. Morgan and submitted by [plaintiff]'s

counsel consisted of a series of conclusory 'check-offs' devoid of any objective

medical findings"); *Hammersley v. Astrue*, 2009 WL 3053707, at *6 (M.D. Fla. Sept.

18, 2009) ("[C]ourts have found that check-off forms . . . have limited probative

value because they are conclusory and provide little narrative or insight into the

reasons behind the conclusions."). Dr. Burkhardt likewise failed to present objective medical evidence to support the various degrees of impairment selected in the medical source statement. R. 969–71.

Second, Dr. Burkhardt's opinions are inconsistent with evidence from his own treatment notes and those of other physicians. The notes from Awe's two appointments with Dr. Burkhardt do not contain any evidence to support the marked or extreme findings indicated on the medical source statement. *See* R. 973–78, 979–84. The notes from the first appointment on February 25, 2020 indicate that Awe presented with "difficulty concentrating" and showed an impairment of "attention/concentration" (R. 975), but these issues were not indicated in the notes from the second appointment on March 30, 2020. R. 981. The notes also do not contain any other evidence to support a "marked" degree of impairment of Awe's "ability to maintain attention and concentration for extended periods." R. 970. Nor is there evidence consistent with an "extreme" impairment to Awe's ability to "understand, remember, and carry out" either simple or complex instructions. *See* R. 973–78 & 979–84. The treatment notes also do not contain any evidence consistent with extreme impairment in Awe's ability to "sustain a routine," "complete a normal workday and workweek," or "respond to customary work pressures." R. 970–71. Ultimately, Dr. Burkhardt's treatment notes cannot be squared with the extreme or marked impairments reflected on his medical source

statement.

Moreover, the medical source statement is inconsistent with medical evidence in the record from other physicians. Treatment notes from Spartanburg Rehabilitation Institute immediately following Awe's stroke reflect that she met with a psychiatrist for an assessment of her psychological status. R. 425–28. He described her as having a "cooperative manner" and noted that she was "alert and attentive." R. 427. The psychiatrist reported that Awe showed "mild depression," but stated that she showed "no formal thought disturbance" and made no notes indicating that her mental functioning was affected by the stroke. R. 426–27. In three appointments with Dr. Thomas Joseph Fox Jr. on January 31, April 4, and May 6, 2019, Awe showed "attention and concentration within normal limits." R. 805, 861, 875. Additionally, notes from four appointments at Crimson Care, LLC, on October 22, September 18, October 2, and November 4, 2019, each indicate that Awe had "no impairments" to her cognitive status. R. 914, 917, 920, 923.

For these reasons, the court concludes that the ALJ applied the proper standard in evaluating Awe's medical evidence and did not err in finding Dr. Burkhardt's opinion not to be persuasive. The ALJ clearly articulated his reasons for finding that the opinion was not well supported or consistent with other medical records. The court finds that substantial evidence supported this decision.

## 2.    Dr. John Goff

The ALJ found that Dr. Goff's opinions presented in the report of his neuropsychological evaluation of Awe were not persuasive:

> The medical report offered by Dr. Goff is considered not persuasive (Exhibit 18F).  He opined that the claimant would have great difficulty and would be slow and error prone when interacting with coworkers, supervisors, and others.   Dr. Goff concluded that the claimant's neuropsychological issues interfere with her ability to deal with the stresses and pressures of the workplace.  This finding is not consistent with the record in its entirety including unremarkable mental status examination (Exhibits 5F, 14F, and 19F).  Further, the claimant is described as pleasant and cooperative, which is indicative of her ability to interact with others. (Exhibit 8F).  Accordingly, Dr. Goff's findings are considered not persuasive.

R. 28.

Substantial evidence supports the ALJ's decision not to find Dr. Goff's opinion to be persuasive, and the court finds that the ALJ properly evaluated Dr. Goff's opinion under the new regulations.  First, Dr. Goff's opinion is not supported by substantial objective medical evidence or substantive explanation.  Dr. Goff's report contains results from tests he administered to Awe during the appointment. R. 906–08.  Awe obtained a full-scale IQ score of 82, which falls at the low average range of psychometric intelligence, but many of her sub-scores were within the average range. R. 906.  Awe performed "adequately" on informal clock drawing tasks. R. 907.  She performed "extremely poorly" in a dexterity test of her right hand. R. 907.  Awe also performed poorly on sequencing tests. R. 907.  Finally, her visual

memory skills were "very good" and her verbal memory skills were "just a bit below average." R. 907.  Dr. Goff did not perform a formal personality evaluation but nevertheless offered the opinion that Awe was "quite depressed." R. 907.

While these results show impairment in some areas, they do not support Dr. Goff's opinions on Awe's inability to work.  Other than a brief mention of Awe's difficulty with "sequencing of elements," Dr. Goff provided no substantive explanation for why Awe would be seen as "slow and perhaps error prone by supervisors, co-workers and others." R. 908.  Nor did Dr. Goff provide any substantive explanation for his opinion that Awe's "psychological condition would interfere with her ability to deal with the stresses and pressures of the workplace." R. 908.

Additionally, Dr. Goff's opinion is inconsistent with his own notes in the report and with medical evidence from other physicians.  Within Dr. Goff's report, he stated that Awe's performance on parts of the Wechsler Memory Scale reflected "very good" visual memory skills and "just a bit below average" verbal memory skills. R. 907.  But in the Summary/Impressions section of the report, Dr. Goff referenced problems with Awe's memory that would represent a "significant impediment." R. 908.  Additionally, as discussed above, treatment notes from Spartanburg Rehabilitation Institute showed an unremarkable psychological status. *See* R. 425–28.  Awe had similarly unremarkable mental status examinations during

appointments throughout 2019 with Dr. Fox and Crimson Care, LLC. *See* 805, 861, 875, 914, 917, 920, 923.

For these reasons, the court concludes that the ALJ applied the proper standards in evaluating Awe's medical evidence and did not err in finding Dr. Goff's opinions not to be persuasive.  The ALJ clearly articulated his reasons for finding that the opinion was not well supported or consistent with the medical records.  The court finds that substantial evidence supported this decision.

## V.  CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards.  Accordingly, the decision of the Commissioner is due to be AFFIRMED.  A final judgment will be entered separately.

DONE and ORDERED on August 3, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE